**ELI LILLY AND COMPANY and Dista Products Company, a Division of Eli Lilly and Company, Relators,**

v.

**The Honorable John MARSHALL, Judge, Respondent.**

**No. D–2003.**

Supreme Court of Texas.

March 24, 1993.

Dissenting Opinion of Justice Doggett April 7, 1993.

Mark E. Smith, Robert G. Hogue, Wade C. Smith, Dallas, Joe C. Freeman, Jr., Atlanta, GA, John L. Hill, Houston, for relator.

Paul L. Smith, William Dorsaneo, Dallas, for respondent.

## ORDER ON RELATOR'S MOTION TO VACATE AND TO ENFORCE COMPLIANCE WITH THE WRIT

This matter arises out of a claim that the anti-depressant drug Prozac, manufactured by Relator Eli Lilly and Company, caused Michael Hays Biffle to commit suicide. The Biffles, plaintiffs in the underlying suit and real parties in interest in this cause, sought production of documents submitted by Lilly to the federal Food and Drug Administration, including reports of possible adverse reactions to the drug submitted by doctors to Lilly. When Judge Marshall refused to permit Lilly to redact the identities of the reporting doctors, Lilly sought mandamus. Determining that the trial court failed to consider the federal regulations and policy behind reporter confidentiality, on February 3, 1993, 850 S.W.2d 155, we held as follows:

> the trial court abused its discretion by directing disclosure of the reporters' identities without a showing of particularized relevance and need, in contravention of important congressional objectives. We therefore conditionally grant the writ and direct Judge Marshall to modify his order in accordance with this opinion. The writ will issue only should he fail to do so.

On February 9, 1993, without hearing further evidence or argument, Judge Marshall modified his October 23, 1991 order by compelling disclosure of the identity of reporters of suicide as an adverse reaction, but permitting redaction of the identities of all other reporters. Lilly has now moved this court to issue the writ of mandamus.

We had anticipated that Lilly would produce all the adverse reaction reports with all the reporters' identities redacted, and then after the Biffles had an opportunity to review them, that Judge Marshall would preside over an additional hearing at which the Biffles would show which of the reporters' identities they needed based on similarity between the adverse reaction described in particular reports and the facts in the Biffles' case. This is the procedure followed by most of the courts cited in our opinion, including the court presiding over the federal multi-district litigation concerning Prozac, and in light of our having announced a new standard for evaluating disclosure of the identities, it is the procedure necessary to effect the balancing between competing interests that we drew in our opinion. All the parties should have the opportunity to present argument and proof in accordance with the standard we announced on February 3, 1993. To the extent our opinion did not make these expectations explicit, we do so now.

Accordingly, Relator's Motion to Vacate and to Enforce Compliance with the Writ is granted in part and denied in part. We direct Judge Marshall to modify his February 9, 1993 order so that Lilly is permitted to redact all reporter identities until the Biffles have had an opportunity to review all the adverse reaction reports, at which time the Biffles may request at a hearing release of the identities of reporters based on a showing of particularized relevance and need. All other requested relief is denied.

DOGGETT, J., notes his dissent.

ENOCH, J., not sitting.

DOGGETT, Justice, dissenting.

Judge John McClellan Marshall followed to the letter what was the law of Texas until changed by the majority in their opinion of February 3, 1993, which he thereafter followed to the letter as well. That writing directed him to give "due consideration" to the "public interest concerns" involved, and to require a showing of "particularized relevance and need" for the reporters' identities. *Id.*

Having already considered this asserted public interest, as well as relevance and need, at three separate hearings, Judge Marshall promptly responded by modifying his order to compel production only of the identities of reporters of adverse reactions involving suicide. The modified order granted the Biffles' motion to compel with respect to this limited category of reports only after

due consideration [had been given] to the public interest concerns manifested by federal law and conclud[ing] that there is a particularized relevance and need, not in contravention of important congressional objectives....

Modified Order of February 9, 1993.

But since even such complete compliance did not produce the result sought by the drug manufacturer, the majority undoes the trial court's order with instructions to start over with yet another set of rules:

We had anticipated that Lilly would produce all the adverse reaction reports with all the reporters' identities redacted, and then after the Biffles had an opportunity to review them, that Judge Marshall would preside over an additional hearing at which the Biffles would show which of the reporters' identities they needed based on similarity between the adverse reaction described in particular reports and the facts in the Biffles' case.

Majority opinion at 165.

Not a word in the prior writing directed Judge Marshall to fulfill this previously unspoken "anticipat[ion]." *Id.* Indeed, that opinion indicated that redacted adverse reaction reports were already a matter of public record. 850 S.W.2d 160, n. 11. Never was the trial court requested to hold a hearing. Since he had already conducted three previous hearings relating to this same issue, Judge Marshall had little reason to discern the majority's desire for a fourth. But even had Marshall done a better job of mindreading, one could hardly conceive of a more narrow view of "similarity" than his limitation of discovery to the identifying data of "reporters ... dealing with suicide as an adverse reaction." Modified Order of February 9, 1993. His order offered a compromise between the conflicting positions urged by each party by restricting discovery to identification of a limited number of reporters in a manner not dissimilar from that in *Newsom v. Breon Labs, Inc.*, 709 S.W.2d 559, 560 (Tenn. 1986), an authority previously relied upon by the majority. 850 S.W.2d at 159. If anything, the ruling reflected an overabundance of caution in seeking to comply with the majority's opinion, and was too confining in its failure to encompass other adverse reactions with great potential relevance that involved very real dangers falling short of suicide.

The instant order represents the fifth time in the course of this lawsuit that the majority has accorded Lilly extraordinary relief. If Judge Marshall is not to be permitted to conduct this proceeding in accordance with Texas law when application of that law conflicts with a drug manufacturer's determination to hide damaging information about what may be a life threaten-

ing product, the majority should say so and end this seemingly endless trekking back and forth from Dallas to Austin, Austin to Dallas, Dallas to Austin.

And it should say so in the way that courts normally speak—through an opinion candidly admitting its own mistakes and the rewriting of our law that is being accomplished rather than through the highly unusual issuance of an order such as this. I trust Judge Marshall has the stamina to persevere through the continuation of this unwarranted interference and that he will make full use of whatever remaining discretion he has as a trial judge.

GAMMAGE, J., joins in this opinion.